## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

**Cameo Quality Homes of Woodbury, Inc.,**

     Plaintiff,

v.

**John Thuringer,**
**Barbara Thuringer,**

     Defendants.

**Civil No. 07-340 (JNE-JJG)**


**REPORT**
**AND**
**RECOMMENDATION**

---

The above matter came before this Court on April 5, 2007 for a hearing on dispositive motions. Defendants John Thuringer and Barbara Thuringer (the Thuringers) move for judgment on the pleadings (Doc. No. 13); plaintiff Cameo Quality Homes (Cameo) moves for partial summary judgment (Doc. No. 24). Mark W. Peery, Esq., and Graham C. Clark, Jr., Esq., appeared on behalf of Cameo. Greg T. Kryzer, Esq., appeared on behalf of the Thuringers. These motions are referred to this Court for a report and recommendation in accordance with 28 U.S.C. § 636 and Local Rule 72.1(c).

## I.     BACKGROUND

Through a contract they executed in August 2005, the Thuringers retained Cameo to provide services in connection with the construction of their residence. The parties dispute the nature of this contract. The Thuringers contend they retained Cameo as a general contractor for the construction of their home. Cameo responds it was only retained to procure supplies and retain subcontractors, and so it had no obligation to supervise the construction site.

While the construction was ongoing, the relationship between the parties soured, allegedly due to delays and concerns about workmanship.  After the Thuringers threatened legal action, the parties began negotiating a settlement in June 2006.

These negotiations were summarized in a letter that Cameo, through its counsel, sent to the Thuringers on June 22, 2006.  Cameo asserted that the parties had a settlement conference on June 12, 2006.  At the conference, Cameo allegedly agreed to settle the matter in exchange for the delivery of certain construction supplies, which included railings, a glass archway, cedar shake and trim, and several interior and exterior doors.  (Exh. 1 at 3-4.)[1]

The Thuringers disagreed with this characterization of their settlement, and so negotiations pressed into July 2006.  (*See* Exh. 2 at 2-3.)  The parties ultimately executed a settlement agreement  on July 22, 2006.  Several portions of this agreement are material here.

The recitals state in relevant part,

> WHEREAS, Cameo has given the Thuringers an eleven thousand dollar ($11,000.00) credit, receipt of which is acknowledged, as consideration for the parties to enter into this contract.

> WHEREAS, Cameo has assisted the Thuringers with obtaining products for the completion of the Thuringers' home, or negotiated terms with suppliers on the Thuringers' behalf, as additional consideration for the parties to enter into this contract.

Though the latter recital mentions that Cameo had either procured or negotiated the delivery of supplies to the Thuringers, details about these efforts are not found elsewhere in the settlement agreement.  (Exh. 3 at 1.)

---

[1] Exhibits are cited in an appendix at the end of this report and recommendation.

2

The agreement then states a general and mutual release of the parties' claims against one another. It provides in relevant part that the Thuringers release all claims

> whether known, suspected or unknown, arising in law or equity, and however originating or exiting from the beginning of time to the date of the execution of this Agreement[.]

It also includes a merger clause, expressly indicating the agreement superseded all prior agreements between the parties. (Exh. 3 at 2, 3.)

At some point afterwards, the Thuringers received invoices from two suppliers for materials that were delivered to the construction site.

One supplier, Glenwood Lumber Supply (Glenwood), billed the Thuringers for materials that were delivered from June through September 2006. Although the Thuringers admit that they ordered most of these items, they contend that they had already paid Cameo for some of the supplies, which were allegedly among those promised in the June 22 letter. (Exh. 2 at 2-3; Exh. 4.)

The invoice billed approximately $16,000. The Thuringers claim that $2,259 of this amount was for supplies allegedly promised from Cameo. Handwritten notes on the invoice, evidently by John Thuringer, make it possible to tell which items the Thuringers believed to be among those promised. These items include some supplies, chiefly decking and staircase materials, which are not explicitly described in the June 22 letter. (Exh. 1 at 3-4; Exh. 4.)

The other supplier, Summit Home Center (Summit), billed the Thuringers for a fireplace. (Exh. 2 at 4.) The record does not indicate when the fireplace was delivered and it lacks a copy of the invoice.

To show payment, the Thuringers submit records from April 2006. These records show that they authorized a withdrawal, in the amount of $4,799, to Cameo to pay for the fireplace.[2] (Exhs. 5, 6.) Cameo received the funds but evidently did not remit payment to Summit. The Thuringers allege the funds were mistakenly applied to another account and that Cameo, instead of remedying this mistake, simply kept the additional funds. (Exh. 2 at 4.) But the record lacks documentation that would adequately explain the error or the resulting windfall.

Cameo refused the Thuringers' request to pay the invoices. The Thuringers then brought an action against Cameo, in a Minnesota conciliation court, in November 2006. They stated their claim, in its entirety, as follows.

> Cameo Quality Homes and the [Thuringers] entered into a purchase agree[ment] for purchase and delivery of supplies to the [Thuringers'] homes. Cameo contracted with [Summit and Glenbrook] for the purchase and delivery of the supplies. Plaintiffs paid Cameo for these supplies. Cameo now refuses to pay [Summit and Glenbrook] for the supplies even though the Plaintiffs have paid Cameo for the supplies. Plaintiffs bring this action to enforce the settlement agreement with Cameo, for money had and received, and unjust enrichment.

(Exh. 8.)

Cameo preempted the conciliation court proceeding, bringing its own action in a Minnesota district court. In addition to a claim for breach of contract in connection with the July 22 settlement agreement, its complaint also raised claims for defamation, tortious interference with contract, and tortious interference with prospective business relations. The Thuringers counterclaimed for breach of contract, also in

---

[2] The record also fails to itemize this amount. The Thuringers submitted bid sheets, prepared by Summit for two fireplaces, from February 2002. The figures in the bid sheets do not correspond with the amount allegedly billed to the Thuringers. (Exh. 7.)

connection with the settlement agreement, and unjust enrichment.  And they removed the action to federal court pursuant to diversity jurisdiction.

The Thuringers now bring a motion for judgment on the pleadings.  They argue that Cameo's claim for breach of the settlement agreement is misplaced, as their claims either arise out of that agreement or accrued after the agreement.  The other claims, the Thuringers contend, are insufficient on the face of the complaint.

Cameo separately brings a motion for partial summary judgment.[3]   Consistent with its claim for breach of contract, it asserts that the Thuringers' claims are barred by the settlement agreement.  The Thuringers repeat their argument that their claims arose after the agreement, and furthermore, request that summary judgment be spontaneously granted in their favor.

## II.   ANALYSIS

### A.   Judgment on the Pleadings

#### 1.   Standard of Review

Rule 12(c) provides that, after the pleadings are closed but a reasonable time prior to trial, a party may move for judgment on the pleadings.  On this motion, a court applies the same standard of review as for a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

---

[3] In its motion for summary judgment and other papers, Cameo contends that the Thuringers filed their answer late, among other procedural defects.  Cameo characterizes the Thuringers as disrespectful, based on their repeated failures to comply with the Civil Rules, and suggests that sanctions are appropriate.  Because Cameo has not formally moved for sanctions or cited authorities that would permit sanctions in the current context, these arguments need not be considered here.

When examining this question, the pleadings are examined with all reasonable inferences in favor of the nonmoving party. *Potthoff v. Morin*, 245 F.3d 710, 715 (8th Cir. 2001). A court may only examine the pleadings and matters incorporated by reference. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

Judgment on the pleadings is appropriate where the pleadings pose no material issues of fact and the moving party is entitled to judgment as a matter of law. *Syverson v. FirePond, Inc.*, 383 F.3d 745, 749 (8th Cir. 2004). This outcome is not appropriate unless it appears, beyond a doubt, that the nonmoving party can prove no set of facts which entitle it to relief. *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994).

Notwithstanding this liberal standard, the nonmoving party must still allege "sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal." *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2006). Put another way, a court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.2d 868, 870 (8th Cir. 2002).

Cameo urges a particularly liberal standard of review. It relies in part on Rule 8(a)(2), which contemplates a simple form of notice pleading based on a "short and plain" statement of the claim. Though notice pleading is intended to avoid overly formal pleading requirements, it does not exempt the plaintiff's obligation to state the factual basis for the claim. *See* 5 Charles A. Wright & Alan R. Miller, *Federal Practice and Procedure* § 1215 (3d ed. 2004); *see also Conley v. Gibson*, 355 U.S. 41, 47 (1957) (observing that a plaintiff must state both the claim "and the grounds upon which it rests").

Cameo has also suggested that its pleadings should be evaluated under state procedural rules, which are purportedly more liberal than the federal rules.  This argument is without merit.

In accordance with the Erie Doctrine, when a federal court hears state claims pursuant to diversity jurisdiction, it applies federal procedural law and state substantive law.  *Archer v. Pavement Specialist, Inc.*, 278 F.3d 845, 846-47 (8th Cir. 2002).  Where a particular issue is controlled by a federal rule, that issue is presumed to be procedural.  The presumption may only be overcome by a showing that the rule exceeds the bounds of the Rules Enabling Act and the constitutional powers of the court.  *Hiatt v. Mazda Motor Corp.*, 75 F.3d 1252, 1258-59 (8th Cir. 1996).  No such showing was made here.

### 2.    Breach of the Settlement Agreement

The Thuringers argue that, because their conciliation court action does not violate the terms of the settlement agreement, Cameo cannot bring an action for breach.

According to its complaint, Cameo asserts that the parties' settlement agreement "contained no additional obligations for additional performance of any kind or nature by Cameo" after it was executed. Describing the breach, Cameo asserts that the Thuringers "continued [to] demand that Cameo provide additional goods" and "that Cameo make payment on claims that had been released by the settlement agreement."  (Exh. 9 at 3.)

Although these allegations are not particularly clear, the parties have not contested that the Thuringers' conduct following the execution of the settlement agreement is at issue.  And the only such conduct reasonably described in the complaint is the conciliation court litigation, because the Thuringers' statement of their claim in that matter is incorporated by reference.

Notwithstanding the inartful drafting of this statement, the Thuringers state their claim is "to enforce the settlement agreement with Cameo, for money had and received, and unjust enrichment." (Exh. 8.) These claims may generally be framed as one for breach of contract—for violation of the settlement agreement—and one for unjust enrichment. These claims, moreover, are consistent with the Thuringers' counterclaims in this litigation. So the material issue is whether litigation of these claims has violated the settlement agreement. This analysis examines each of the claims in turn.

### a.    Breach of Contract

Regarding their claim for breach of contract, Cameo asserts the Thuringers are attempting to revive a dispute that existed prior to the settlement agreement. It claims that the Thuringers did so by demanding payment for items promised in the June 22 letter. And it argues that the settlement agreement was fully integrated, so under the parol evidence rule, the June 22 letter cannot be used to interpret the agreement.

The Thuringers counter that their action seeks enforcement of settlement agreement itself. Because this action necessarily arose after the execution of the settlement agreement, they argue, it is not forbidden by that agreement.

A settlement agreement is a contract and it is interpreted in accordance with contract law. As a result, its language is given its plain meaning, consistent with the parties' understanding and the circumstances at the time of formation. *Goddard, Inc. v. Henry's Foods, Inc.*, 291 F.Supp.2d 1021, 1028 (D.Minn. 2003); *State ex rel. Humphrey v. Philip Morris USA, Inc.*, 713 N.W.2d 350, 355 (Minn. 2006). But where the language of a contract is ambiguous, meaning it is reasonably susceptible of more than one meaning, extrinsic evidence may be used to interpret that language. *Housing & Redevel. Auth. v. Norman*, 696 N.W.2d 329, 337 (Minn. 2005).

The parol evidence rule provides that, when parties reduce their agreement to an integrated writing, extrinsic evidence cannot be used to contradict that writing. If a contract contains a merger clause, stating that the contract is an integrated writing, then it is presumed to be integrated. *Alpha Real Estate Co. v. Delta Dental Plan*, 664 N.W.2d 303, 312, 314 (Minn. 2003).

Even in the case of an integrated writing, extrinsic evidence may still be used to help interpret the contract under certain circumstances. As the Minnesota Supreme Court stated in *Weyerhauser Co. v. Hvidsten*:

> Although preliminary negotiations cannot be allowed to contradict or vary the terms of a written contract purporting to integrate the entire transaction, nevertheless, where the terms or words used are ambiguous or reasonably susceptible of more than one interpretation, such negotiations may be considered to determine the meaning and intent of the parties.

127 N.W.2d 772, 776 (Minn. 1964). Put another way, where a contract has a merger clause, pre-contract negotiations remain admissible to resolve ambiguities in the contract. *Cf. Minnesota Sch. Bds. Ass'n Ins. Trust v. Employers Ins.*, 331 F.3d 579, 582 (8th Cir. 2003); *Kehne Elec. Co. v. Steenberg Const. Co.*, 177 N.W.2d 309, 311 n. 5 (Minn. 1970) (describing the rule as "well settled").

The parties have not contested that the settlement agreement contains a merger clause, and therefore, it is a fully integrated contract. Extrinsic evidence, therefore, cannot be used to contradict it. But this outcome does not prevent the use of extrinsic evidence to interpret ambiguous portions of the settlement agreement.

According to one of recitals in the parties' settlement agreement, Cameo supplied additional consideration when they "assisted the Thuringers with obtaining products for the completion of the

Thuringers' home, or negotiated terms with suppliers on the Thuringers' behalf[.]"  The agreement lacks any indication, however, of what Cameo had to do to meet this obligation.  This recital is vague and extrinsic evidence may be used to interpret it.

Such evidence is supplied by the June 22 letter, which is attached to the Thuringers' answer and thus is incorporated in the pleadings.  This letter specified the delivery of certain construction supplies. When examined with the recital, the only reasonable conclusion is that procurement of these supplies was part of the consideration for the parties' settlement.  The Thuringers' efforts to obtain these supplies, therefore, were incident to the parties' obligations under the settlement agreement itself.

Under the plain language of the settlement agreement, the parties executed a release that bars claims that accrued "from the beginning of time to the date of the execution of this Agreement[.]"  Because this language does not bar future claims, it does not prevent the Thuringers from seeking relief pursuant to the parties' agreement.  *See, e.g., Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 526-27 (2d Cir. 1994); *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 90 (Ill. 2003); *Clark v. Columbia HCA Information Servs., Inc.*, 25 F.3d 215, 223-24 (Nev. 2001).  So the Thuringers' claim for breach of contract does not violate the parties' settlement agreement, and to the extent that Cameo asserts its own claim for breach of contract on this theory, it fails as a matter of law.

### b.    Unjust Enrichment

Assuming for the sake of argument that the Thuringers have a claim for unjust enrichment, Cameo asserts the claim arose prior to the settlement agreement and is barred by it.  The Thuringers counter that,

because they did not discover the claim until after the agreement was executed, it was not barred.[4]

A claim for unjust enrichment "arises when a party gains a benefit illegally or unlawfully." *Midwest Sports Marketing, Inc. v. Hillerich & Bradsby of Canada, Ltd.*, 552 N.W.2d 254, 268 (Minn. App. 1996). Unjust enrichment cannot be founded just on allegations that an adverse party received a benefit. There must be some showing that this benefit was illegal or unlawful. *In re MJK Clearing, Inc.*, 286 B.R. 109, 126 (Bankr. D.Minn. 2002); *First Nat'l Bank v. Ramier*, 331 N.W.2d 502, 504 (Minn. 1981).

The analysis here must be limited to the complaint and documents incorporated by reference. As previously determined, Cameo had an obligation to procure supplies under the parties' settlement agreement. And according to the Thuringers' statement of their conciliation court claims, they had paid for these supplies, notwithstanding Cameo's obligation to procure them.

It may be assumed, for the sake of argument, that the Thuringers paid for the supplies and that Cameo received this benefit prior to execution of the settlement agreement. The critical event, however, was the point at which retention of these funds became unlawful.

Taking all reasonable inferences in its favor, Cameo nevertheless acknowledged its obligation to procure the supplies in the settlement agreement. So its retention of the funds used to pay for those supplies could only become illegal or unlawful *after* the settlement agreement was executed. The pleadings do not reasonably support a conclusion to the contrary.

---

[4] Although the parties do not raise these arguments in the context of the Thuringers' motion for judgment on the pleadings, they do raise some of them in the context of Cameo's motion for summary judgment. But these issues are material to both motions, and so the parties' arguments on the motion for summary judgment will be given equal weight in this context, so long as they are consistent with the standard of review here.

The Thuringers' claim for unjust enrichment, therefore, necessarily arose after the settlement agreement was executed.  As previously noted, the release in that agreement did not bar subsequent claims, and so the Thuringers' prosecution of that claim does not violate the agreement.  Once again, to the extent Cameo asserts a breach of the settlement agreement on this theory, it fails as a matter of law.

### 3.    Tort Claims

For the  remaining claims, the Thuringers argue that the allegations in the complaint are not sufficient to state a claim.  These claims are for defamation, tortious interference with contract, and tortious interference with prospective business relations.

Regarding the defamation claim, the Thuringers assert that Cameo has not adequately pleaded either a defamatory statement or damages.  Cameo correctly notes that, where defamation involves a person's reputation in a trade or business, there is defamation per se and damages need not be pleaded. *See Surgidev Corp. v. Eye Tech., Inc.*, 625 F.Supp. 800, 807 (D.Minn. 1986); *Becker v. Alloy Hardfacing & Eng'g Co.*, 601 N.W.2d 655, 661 (Minn. 1987).  But the plaintiff must still recite the allegedly defamatory statements in the complaint.  *Moreno v. Crookston Times Publishing Co.*, 610 N.W.2d 321, 326 (Minn. 2000).  Because Cameo has not done so, its claim for defamation fails.

Regarding the tortious interference claims, the Thuringers assert that Cameo has not alleged a contract or prospective contract that would support such claims.  To plead tortious interference with contract, the plaintiff must allege the existence of a contract and a breach of the contract.  *Flora v. FirePond, Inc.*, 260 F.Supp.2d 780, 789 (D.Minn. 2003); *Ludowese v. Redmann*, 479 N.W.2d 59, 63 (Minn. App. 1991).  And to plead tortious interference with prospective business relations, the plaintiff must

allege a loss of business from specified customers. *McClure v. American Family Mut. Ins. Co.*, 223 F.3d 845, 855 (8th Cir. 2000).

Cameo has not alleged the existence of a contract, or any prospective transaction, that would adequately support its tortious interference claims. To the contrary, its allegations are precisely the sort of unsupported conclusions that require judgment on the pleadings. Its tortious interference claims also fail.

With all reasonable inferences taken in its favor, Cameo raises no issues of material fact in its complaint, and the Thuringers are entitled to judgment as a matter of law. This Court accordingly recommends that the Thuringers' motion for judgment on the pleadings be granted and that all the claims in Cameo's complaint be dismissed with prejudice.

### B.    Summary Judgment

#### 1.    Standard of Review

A party is entitled to summary judgment under Rule 56 where the record, through sworn and competent affidavits, shows no issue of material fact and the moving party is entitled to judgment as a matter of law. *Elder-Keep v. Aksamit*, 460 F.3d 979, 984 (8th Cir. 2006); *Cordry v. Vanderbilt Mortgage & Finance, Inc.*, 445 F.3d 1106, 1109-10 (8th Cir. 2006). When examining whether there are such issues of material fact, all reasonable inferences are taken in favor of the nonmoving party. *Johnson v. Metropolitan Life Ins. Co.*, 437 F.3d 809, 812-13 (8th Cir. 2006).

An issue of material fact exists where there is sufficient evidence for a jury to reasonably find for the nonmoving party. *Bass v. SBC Communications, Inc.*, 418 F.3d 870, 873 (8th Cir. 2005). Where the nonmoving party fails to allege any facts that support an essential element of a claim, however, summary judgment on that claim is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Although the Thuringers have not filed a cross-motion for summary judgment, they contend that it is appropriate for summary judgment to be spontaneously entered in their favor. A court does have discretion to enter summary judgment in such circumstances, so long as the moving party has sufficient notice and an opportunity to demonstrate why summary judgment should not be granted for the nonmoving party. But when granting summary judgment for the nonmoving party, inferences must be taken in favor of the *moving* party. *See Advantage Consulting Group, Inc. v. ADT Security Sys., Inc.*, 306 F.3d 582, 588 (8th Cir. 2002); *Madewell v. Downs*, 68 F.3d 1030, 1049-50 (8th Cir. 1995).

### 2.    Breach of Contract

Cameo challenges the Thuringers' claim for breach of contract. It initially argues that this claim is barred by the parties' settlement agreement. As previously determined in the context of the Thuringers' motion for judgment on the pleadings, this argument fails. Cameo also challenges the Thuringers' contention that it failed to supply consideration due under the agreement.

The Thuringers counter that, as part of the consideration for the settlement agreement, Cameo agreed to procure construction supplies. They contend that Cameo failed to do so, and therefore, it breached the settlement agreement.

To establish an action for breach of contract, a party must show that an enforceable contract exists, that it was breached, and that the breach caused damages. *SL Montevideo Tech., Inc. v. Eaton Aerospace, LLC*, 292 F.Supp.2d 1173, 1180 (D.Minn. 2003).

The first issue here is whether the settlement agreement is an enforceable contract. For a contract to be enforceable, each party must provide consideration. Where a party agrees to provide consideration,

14

but then fails to do so, there is not an enforceable contract and the correct remedy is rescission.[5] *Franklin v. Carpenter*, 244 N.W.2d 492, 495 (Minn. 1976); *In re MJK Clearing, Inc.*, 408 F.3d 512, 515 (8th Cir. 2005).

What is troubling here is that the Thuringers argue a failure of consideration, which would mean that the settlement agreement is unenforceable. This position is wholly inconsistent with their claim for breach of contract. So in order to take all reasonable inferences in the Thuringers' favor, it is necessary to see whether there are facts showing *no* failure of consideration, which then support the existence of an enforceable contract.

Cameo contends it provided all consideration due under the settlement agreement, including the delivery of construction supplies. (Exh. 10 at 3.) This record is sufficient to establish that there was no failure of consideration and that the settlement agreement was valid and enforceable.

The second issue is whether there was a breach. Implicit in the Thuringers' position is that the failure of consideration by Cameo constitutes a breach of contract. This premise is flawed for several reasons.

As noted before, a failure of consideration is inconsistent with the existence of an enforceable contract. Allegations that show a failure of consideration, therefore, cannot establish a breach. *See* 8 Catherine M.A. McAuliff, *Corbin on Contracts* § 32.9 (rev. ed. 1999) (observing that a failure of

---

[5] A potentially confusing issue here is the difference between "lack of consideration" and "failure of consideration." Lack of consideration is a defect in the formation of a contract, where the contract itself does not require a party to provide consideration. Such a contract is void and its execution has no legal effect. By comparison, failure of consideration involves circumstances where a contract is supported by consideration but a party then fails to provide it. Such a contract remains enforceable unless or until the failure occurs. *Franklin v. Carpenter*, 244 N.W.2d 492, 495 (Minn. 1976).

consideration, though it also may be viewed as a failure of performance, involves circumstances where the failure renders a contract unenforceable).

There is also an important distinction to be made between consideration and performance. Consideration may consist of a promise to perform the obligations of the contract in the future. It is the *promise* to perform, and not the ensuing performance, that supplies consideration. So a failure to perform is not a failure of consideration. *See MJK Clearing, Inc.*, 408 F.3d at 516 (citing *Noreen v. Park Const. Co.*, 96 N.W.2d 33, 38 (Minn. 1959)).

In the current litigation, the difference between consideration and performance is easier to spot because the underlying acts are completely different. According to the recital in the settlement agreement, as part of the consideration, Cameo was to procure certain construction supplies. But the performance contemplated by the settlement agreement was the *release*: the parties' agreement not to bring litigation against one another. Thus a failure of consideration involves different concerns than a breach does.

The Thuringers conflate breach with failure of consideration. Due to this misapprehension, they have failed, as a matter of law, to supply any allegations that would demonstrate a breach. For this reason, they have failed to establish an essential element of their claim for breach of contract and it accordingly fails.

### 3.    Unjust Enrichment

Cameo also challenges the Thuringers' claim for unjust enrichment. It repeats its argument that this claim is barred by the parties' settlement agreement. This argument was rejected previously in the context of the motion for judgment on the pleadings, and so it requires no additional analysis here. But Cameo raises another argument. It asserts that the parties' relationship is controlled by a valid contract, and therefore, the Thuringers cannot seek equitable relief such as unjust enrichment.

16

Cameo correctly states the general rule that, where the parties' rights are controlled by a valid contract, equitable relief is not available. *U.S. Fire Ins. Co. v. Minnesota State Zoological Bd.*, 307 N.W.2d 490, 497 (Minn. 1981). But where a contract does not completely govern the rights of the parties, *In re MJK Clearing, Inc.*, 286 B.R. 109. 126 (Bankr. D.Minn. 2002), or where it lacks terms that adequately describe the rights of the parties, *Stein v. O'Brien*, 565 N.W.2d 472, 474 (Minn. App. 1997), then equitable relief remains available.

In their claim for unjust enrichment, the Thuringers allege they paid Cameo for construction supplies; that it agreed to procure those supplies as consideration for the settlement agreement; and that it failed to procure the supplies but kept the proceeds. As noted previously, the agreement lacks any terms that meaningfully describe how and when the supplies would be handled. Nor does it cover any contingency for failure to procure the supplies or for refund of proceeds. The agreement does not adequately describe the rights of the parties, and for this reason, it does not prevent the Thuringers from seeking equitable relief.

The Thuringers suggest that it is appropriate to spontaneously grant summary judgment in their favor. But in the context of their claim for unjust enrichment, there is some cause for concern. The record does not plainly indicate when the Thuringers paid Cameo for some of the disputed items or when the Thuringers were billed for them. And it is unclear whether the June 22 letter includes all of the disputed items.

These concerns may signal that there are issues of material fact that would preclude the entry of summary judgment in the Thuringers' favor. Under these circumstances, it is not an appropriate exercise of discretion to spontaneously grant summary judgment, and this Court declines to engage in substantial

analysis on this issue.  This outcome, however, is not intended to preclude the parties from litigating this issue on an appropriate motion in the future.

## III.   CONCLUSION

Regarding the Thuringers' motion for judgment on the pleadings, their claims arose out of circumstances that occurred after the settlement agreement, and so litigation of those claims did not violate the settlement agreement.  So Cameo's claim for breach of contract, based on such a violation of the settlement agreement, fails as a matter of law.  The remaining tort claims are not adequately supported by the allegations in the complaint and they also fail.  This Court concludes, therefore, that the motion for judgment on the pleadings should be granted.

Regarding Cameo's motion for partial summary judgment, the Thuringers have failed to offer any allegations that demonstrate a breach of the settlement agreement, and so their claim for breach of contract fails as a matter of law.  Their other claim for unjust enrichment is not prevented by the settlement agreement, and there are issues of material fact that preclude summary judgment on this claim.  For these reasons, this Court recommends that the motion for summary judgment be granted in part and denied in part.

## IV.   RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1.    The Thuringers' motion for judgment on the pleadings (Doc. No. 13) be **GRANTED.**

2.    Cameo's motion for partial summary judgment (Doc. No. 24) be **GRANTED IN PART AND DENIED IN PART.**

3.      All the claims in Cameo's complaint be **DISMISSED WITH PREJUDICE.**

4.      The counterclaim for breach of contract in the Thuringers' answer be **DISMISSED WITH PREJUDICE.**

Dated this 19th day of April, 2007.                              s/Jeanne J. Graham

_____

JEANNE J. GRAHAM
United States Magistrate Judge

## NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by May 8, 2007.  A party may respond to the objections within ten days after service.  Any objections or responses filed under this rule shall not exceed 3,500 words.  The District Court shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.  Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.

## APPENDIX

Exh. 1       Defs.' Ans. of Jan. 25, 2007, Exhs. (Letter of G. Clark, June 22, 2006).

Exh. 2       Aff. of J. Thuringer, Mar. 15, 2007.

Exh. 3       Plf.'s Compl. of Jan. 25, 2007, Exh. (Settlement Agreement, July 26, 2006).

Exh. 4       Aff. of J. Thuringer, Mar. 15, 2007, Exh. D (Statement of Glenwood, Oct. 5, 2006).

Exh. 5       Aff. of J. Thuringer, Mar. 15, 2007, Exh. E (Facsimile of Cameo, Apr. 24, 2006).

Exh. 6       Aff. of J. Thuringer, Mar. 15, 2007, Exh. F (Draw Report of Eagle Valley Bank, Aug. 11, 2006).

Exh. 7       Aff. of J. Thuringer, Mar. 15, 2007, Exh. G (Quote Sheet of Summit, Feb. 21, 2006).

Exh. 8          Plf.'s Compl. of Jan. 25, 2007, Cover (Statement of Claim, Nov. 20, 2006).

Exh. 9          Plf.'s Compl. of Jan. 25, 2007.

Exh. 10         Aff. of D. Milota, Feb. 12, 2007.